IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| IN RE STAR SCIENTIFIC, INC. SECURITIES LITIGATION | Master File No. 3:13-CV-00183-JAG<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. BACKGROUND OF THE ACTION ..... 3

A. Procedural History of the Action ..... 3

B. Settlement Negotiations and Mediation ..... 5

C. Preliminary Approval and Notice to Shareholders ..... 6

D. Terms of the Settlement ..... 7

III. STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS ..... 8

IV. THE SETTLEMENT MERITS FINAL APPROVAL ..... 10

A. The Settlement Is Fair ..... 10

1. The Extent of Investigation and Discovery Conducted Supports Fairness of the Settlement ..... 10

2. The Circumstances Surrounding Settlement Negotiations Support Fairness of the Settlement ..... 12

3. The Experience of Counsel Supports the Fairness of the Settlement ..... 13

B. The Proposed Settlement Is Adequate ..... 14

1. The Strength of Lead Plaintiff's Case on the Merits and the Existence of Any Difficulties of Proof or Defenses Lead Plaintiff May Encounter Support the Adequacy of the Settlement ..... 14

2. The Complexity, Length, and Expense of Further Litigation Supports Approval of the Settlement ..... 17

3. The Potential Insolvency of Defendants and the Likelihood of Recovery on a Litigated Judgment Supports Settlement Approval ..... 19

4. The Settlement Class Members Reaction to the Settlement Further Supports Approval of the Settlement ..... 21

V. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND SHOULD BE APPROVED ..... 23

VI. THE COURT SHOULD GRANT FINAL CLASS CERTIFICATION FOR SETTLEMENT PURPOSES ..... 24

VII. CONCLUSION ........................................................................................................24

## TABLE OF AUTHORITIES

**CASES** **Page(s)**

*Backman v. Polaroid Corp.*,
910 F.2d 10 (1st Cir. 1990) ..... 17

*Beecher v. Able*,
575 F.2d 1010 (2nd Cir. 1978) ..... 23

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
603 F.2d 263 (2d Cir. 1979) ..... 17

*Carson v. Am. Brands, Inc.*,
450 U.S. 79 (1981) ..... 10

*Chatelain v. Prudential-Bache Sec., Inc.*,
805 F. Supp. 209 (S.D.N.Y. 1992) ..... 21

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ..... 16

*Deem v. Ames True Temper, Inc.*,
No. 6:10-CV-01339, 2013 WL 2285972 (S.D. W.Va. May 23, 2013) ..... 10

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) ..... 16

*Flinn v. FMC Corp.*,
528 F.2d 1169 (4th Cir. 1975) ..... 9, 13, 21

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
No. MDL 1500, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ..... 16

*In re Delphi Corp. Sec., Derivative & ERISA Litig.*,
248 F.R.D. 483 (E.D. Mich. 2008) ..... 22

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ..... 16

*In re Holocaust Victim Assets Litig.*,
413 F.3d 183 (2d Cir. 2001) ..... 24

*In re Ikon Office Solutions, Inc.*,
194 F.R.D. 166 (E.D. Pa. 2000) ..... 18

*In re Jiffy Lube Securities Litigation*,
927 F.2d 155 (4th Cir. 1991) ..... 2, 9, 10

*In re Mego. Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ....................11

*In re MicroStrategy, Inc. Sec. Litig.*,
148 F. Supp. 2d 654 (E.D. Va. 2001) .................... *passim*

*In re MicroStrategy, Inc. Sec. Litig.*,
150 F. Supp. 2d 896 (E.D. Va. 2001) ....................8, 9

*In re Mills Corp. Sec. Litig.*,
265 F.R.D. 246 (E.D. Va. 2009) ....................14

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2007) ....................22, 23

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997) ....................24

*In re Rambus, Inc. Derivative Litig.*,
No. C06-3513 JF(HRL), 2009 WL 166689 (N.D. Cal. Jan. 20, 2009)....................21

*In re SmithKline Beckman Corp. Sec. Litig.*,
751 F. Supp. 525 (E.D. Pa. 1990) ....................17

*In re Star Scientific, Inc. Derivative Litig.*,
No. 1:13-CV-00550, Order (E.D. Va. Mar. 31, 2015)....................20

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985) ....................17, 20

*Kurz v. Phila. Elec. Co.*,
96 F.3d 1544 (3d Cir. 1996)....................17

*Lomascolo v. Parsons Brinckerhoff, Inc.*,
No. 1:08cv1310, 2009 WL 3094955 (E.D. Va. Sept. 28, 2009)....................8

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)....................23

*Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ....................21

*Reynolds v. Beneficial Nat'l Bank*,
288 F.3d 277 (7th Cir. 2002) ....................19, 20

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ....................17

*S.C. Nat'l Bank v. Stone*,
139 F.R.D. 335 (D.S.C. 1991) ....................................................................9, 12, 13

*S.C. Nat'l Bank v. Stone*,
749 F. Supp. 1419 (D.S.C. 1990)....................................................................10, 14

*Stoetzner v. U.S. Steel Corp.*,
897 F.2d 115 (3d Cir.1990)..................................................................................22

*Stott v. Capital Fin. Servs., Inc.*,
No. 3:11-cv-2073-F, 2011 WL 4047666 (N.D. Tex. Sept. 12, 2011)...............................21

*Strang v. JHM Mortg. Sec. Ltd. P'ship*,
890 F. Supp. 499 (E.D. Va. 1995) ....................................................................10, 12

*U.S. v. Robert F. McDonnell and Maureen G. McDonnell*,
No. 3:14cr12-JRS (E.D. Va.) ..................................................................................5

*United States v. North Carolina*,
180 F.3d 574 (4th Cir. 1999) ..............................................................................13

*White v. NFL*,
822 F. Supp. 1389 (D. Minn. 1993), *aff'd*, 41 F.2d 402 (8th Cir. 1994)...........................23

*Williams v. Nat'l Sec. Ins. Co.*,
237 F.R.D. 685 (M.D. Ala. 2006)..........................................................................21

**STATUTES, RULES & OTHER AUTHORITIES**

Fed. R. Civ. P. 23(e)(2).............................................................................................8

## I. INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure ("Rule 23"), Lead Plaintiff Nancy Lopes ("Lead Plaintiff"), on behalf of herself and all members of the proposed Settlement Class, respectfully submits this memorandum of law in support of her Motion for Final Approval of Class Action Settlement and Plan of Allocation ("Motion").[1] The terms and conditions of the Settlement are set forth in the Stipulation, which was filed with Lead Plaintiff's Uncontested Motion for Preliminary Approval of the Proposed Class Action Settlement and Certification of Settlement Class (the "Preliminary Approval Motion") on February 5, 2015. Docs. 124-25. On March 2, 2015, the Court granted preliminary approval of the Settlement. Doc. 129. Pursuant to the Preliminary Approval Order, Notice was mailed to all Settlement Class Members, posted (along with the Stipulation and Proof of Claim and Release Form) on the websites of Lead Counsel and the Claims Administrator, and the Summary Notice was published in *Investor's Business Daily*. Lead Plaintiff now seeks final approval of the Settlement.

In consideration for release of the claims and dismissal of the Action with prejudice, the Settlement provides for certain of Star Scientific Inc.'s insurers to pay from certain D&O Policies $5,900,000 in cash (the "Settlement Amount").[2] *See* Stipulation, ¶2.1. As detailed herein and in the accompanying Declaration of Stephen J. Oddo in Support of Lead Plaintiff's: (1) Motion for Final Approval of Class Action Settlement and the Plan of Allocation; and (2) Application for an Award of Attorneys' Fees and Expenses ("Oddo Declaration" or "Oddo Decl."), the Settlement

---

[1] All capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Amended Stipulation of Settlement dated and filed with the Court on February 5, 2015 ("Stipulation"). Doc. 123. All emphasis is added and citations and footnotes are omitted, unless otherwise noted.

[2] On June 2, 2014, Star Scientific, Inc. announced it had changed its name to Rock Creek Pharmaceuticals, Inc. For the sake of convenience, this Memorandum refers to the company as "Star Scientific" or the "Company."

was achieved after a comprehensive pre-discovery investigation by Lead Counsel, briefing of a motion for class certification and multiple motions to dismiss, and extensive settlement negotiations involving both settlement conferences before the Honorable Magistrate Judge David J. Novak ("Judge Novak") with multiple follow-up sessions and a full day mediation. The Settlement was negotiated by experienced and informed counsel with a firm understanding of the strengths and weaknesses of their clients' respective claims and defenses, and provides a present recovery for the Settlement Class in the face of substantial challenges and risks specific to this case, including the substantial risks of continued litigation.

In consideration of the foregoing, Lead Plaintiff and Lead Counsel firmly believe that this Settlement is an outstanding result for the Settlement Class, clearly satisfies Fourth Circuit standards for final approval as set forth in *In re Jiffy Lube Securities Litigation*, 927 F.2d 155, 159 (4th Cir. 1991) and is unquestionably fair, reasonable, and adequate. Furthermore, the proposed plan of allocation of settlement proceeds ("Plan of Allocation"), developed with Lead Plaintiff's damages consultants, provides for an equitable distribution among Settlement Class Members and is necessarily fair, reasonable, and adequate.

While the deadline for filing objections has not yet passed, members of the Settlement Class appear to agree with Lead Counsel's conclusion concerning the fairness of the Settlement. Pursuant to the Preliminary Approval Order, over 51,097 copies of the Notice and Proof of Claim forms were sent to Settlement Class Members. *See* Oddo Decl., ¶65. As of the date of filing, only ***one*** objection and one request for exclusion have been received. *Id.* But both seem to take issue more with the treatment of Star Scientific by the Food and Drug Administration ("FDA") and/or the media than with the substantive terms of the Settlement and are discussed *infra* Section IV.B.4.

In sum, the Settlement guarantees an amount in recovery for the Settlement Class that far outweighs the possibility that a better result might have been obtained through further litigation given the significant risks, costs, and delays entailed in attempting to establish liability and damages at trial. Thus, Lead Plaintiff respectfully requests this Court grant: (i) final approval of the proposed Settlement embodied in the Stipulation; (ii) final approval of the methods and forms of notice provided to Settlement Class Members; (iii) final certification of the Settlement Class for Settlement purposes; and (iv) final approval of the Plan of Allocation.

## II. BACKGROUND OF THE ACTION[3]

### A. Procedural History of the Action

Between March 25, 2013, and May 7, 2013, a number of Star Scientific shareholders filed class action complaints in the U.S. District Court for the Eastern District of Virginia on behalf of purchasers of Star Scientific common stock. On June 21, 2013, these actions were consolidated into *In re Star Scientific Securities Litigation,* Master File No. 3:13-cv-00183-JAG (the "Action"). Doc. 24. The Court also appointed plaintiff Nancy Lopes as Lead Plaintiff, Robbins Arroyo LLP as Lead Counsel, and Hirschler Fleischer, P.C. as Liaison Counsel. *Id.*

On September 5, 2013, Lead Plaintiff filed the Consolidated Amended Complaint for Violations of the Federal Securities Laws ("Complaint") alleging violations of sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") (15 U.S.C. §78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5) by the U.S. Securities and Exchange Commission ("SEC"), on behalf of a class of all persons and entities who purchased or otherwise acquired the publicly traded common stock of Star Scientific between May 10, 2011,

[3] The Court is respectfully referred to the accompanying Oddo Declaration for a full recitation of the factual background and procedural history of the litigation, the litigation efforts of Lead Counsel, the significant risks of continued litigation, a detailed discussion of the negotiations leading to the Settlement and the factors bearing on the reasonableness of the Settlement.

and January 23, 2013, inclusive.[4] Doc. 39. Specifically, the Complaint alleged that Defendants made materially false and misleading statements about Johns Hopkins University School of Medicine's ("Johns Hopkins") purportedly independent and official involvement in pre-clinical and clinical studies of Star Scientific's main product, Anatabloc®.

On October 25, 2013, Defendants filed a Motion to Dismiss Plaintiff's Consolidated Amended Complaint ("Motion to Dismiss") on the grounds that the market was already aware of the truth of the Johns Hopkins researchers' financial relationship to Star Scientific prior to the time of the alleged representations, that Lead Plaintiff had not adequately alleged and could not prove specific misrepresentations, that Lead Plaintiff had not adequately alleged that Defendants acted with scienter, and/or that any of the misstatements could be attributed to any of the Individual Defendants. Doc. 45-47. On November 21, 2013, Lead Plaintiff filed an opposition to the Motion to Dismiss. Doc. 53.

The Court held a hearing on the Motion to Dismiss on January 7, 2014. Oddo Decl., ¶17. At the hearing, the Court issued an initial pretrial order, which set a trial date and deadlines for filing motions and completing discovery. Doc. 59. The Court ordered supplemental briefing on the Motion to Dismiss on January 7, 2014 and again on March 13, 2014. Docs. 58, 93.

Soon after the Motion to Dismiss hearing, the Parties began serving discovery requests on each other. Oddo Decl., ¶18. Before any documents were exchanged, however, the U.S. Department of Justice ("DOJ") moved to intervene in the case and stay all discovery. Docs. 76-79; Oddo Decl., ¶18. The Court granted the DOJ's motion to stay on January 28, 2014, staying

[4] The Settlement Class Period for the proposed Settlement (which runs from May 10, 2011 to September 12, 2014) extends beyond the initial class period set forth in the Amended Complaint because it encompasses Lead Plaintiff's additional claims regarding Defendants' misrepresentations about: (i) the regulatory status and approval of Star Scientific's two products Anatabloc® and CigRx®; and (ii) former Virginia Governor Robert McDonnell and his wife Maureen's independent endorsement of Anatabloc. *See* Stip., ¶1.35; Oddo Decl., ¶14 n.4.

the case until the conclusion of the jury trial or other disposition in the case of *U.S. v. Robert F. McDonnell and Maureen G. McDonnell*, No. 3:14cr12-JRS (E.D. Va.) ("McDonnell Action"). Doc. 80-81. Pursuant to this stay order, the Parties moved to postpone all case-related deadlines pending the lifting of the stay of discovery, which the Court granted on February 11, 2014. Doc. 88.

On August 20, 2014, the Court entered an Order denying the Motion to Dismiss without prejudice to its later renewal in the event that the case did not settle and ordered the Parties to submit a Stipulation of Dismissal by October 6, 2014. Docs. 98-99.

On October 21, 2014, the Court lifted the stay in this Action. Doc. 103. On November 5, 2014, Defendants renewed their motion to dismiss. Doc. 107. On November 19, 2014, Lead Plaintiff filed an opposition to the renewed motion to dismiss. Doc. 111. On November 25, 2014, Defendants filed a reply in support of their renewed motion to dismiss. Doc. 115.

On November 5, 2014, Lead Plaintiff filed a Motion for Class Certification and Appointment of Class Counsel ("Motion for Class Certification"). Docs. 104-06. On December 16, 2014, Defendants deposed Lead Plaintiff. Oddo Decl., ¶22.

**B. Settlement Negotiations and Mediation**

On February 4, 2014, the Parties appeared telephonically before Judge Novak to discuss participating in a settlement conference. Oddo Decl., ¶23. In advance of the March 4, 2014 settlement conference (the "Settlement Conference"), the Parties filed Settlement Conference briefs. *Id.* Lead Plaintiff also sent a settlement demand letter proposing a settlement consisting of a common fund. *Id.* On March 4, 2014, the Parties participated in an in-person Settlement Conference with Judge Novak. *Id.*, ¶24.

Thereafter, the Parties agreed to schedule an all-day, in person mediation with Jed Melnick of JAMS, a mediator with extensive experience in handling complex representative

actions, including class actions. Oddo Decl., ¶25. In advance of the mediation, the Parties sent briefs to the mediator regarding their positions on key issues of dispute. *Id.* After a full day of contentious negotiations at the mediation on July 29, 2014, the Parties reached an agreement in principle to settle the Action. *Id.*, ¶26.

During the ensuing months, the Parties diligently worked on documenting the terms of the settlement agreement. Oddo Decl., ¶27. On January 15, 2015, after significant arm's-length negotiations, the Parties executed and filed with the Court the Stipulation of Settlement. *Id.*, ¶28; Doc. 122. On February 5, 2015, the Parties executed and filed with the Court an amended Stipulation. Doc. 123.

### C. Preliminary Approval and Notice to Shareholders

On February 5, 2015, Lead Plaintiff filed the Preliminary Approval Motion. Docs. 124-25. On March 2, 2015, following a preliminary approval hearing on February 12, 2015**,** the Court issued the Preliminary Approval Order. Doc. 129. In accordance with the Preliminary Approval Order, individual Notices were mailed to approximately 51,097 potential Settlement Class Members and their nominees and the Summary Notice was published in the national edition of *Investor's Business Daily*. Oddo Decl., ¶30. The Notice was also posted (along with the Stipulation and Proof of Claim) on the websites of Lead Counsel and the Claims Administrator.[5] *Id.*

[5] The Notice directed Settlement Class Members to the Claims Administrator's case-dedicated website with the relevant settlement documents and a toll-free telephone hotline for Settlement Class Members to call to get further information about the Settlement. *See* www.starscientificsecuritiessettlement.com; Oddo Decl., ¶30 n.5.

The last day for shareholders to file objections to the Settlement will be June 1, 2015.[6] Oddo Decl., ¶¶32, 65. To date, Lead Counsel has only received only one objection and one request for exclusion. *Id.* Neither, however, criticizes the terms of the Settlement. The objection, from Star Scientific shareholder Michael Bradley, does not even mention the substantive terms of the Settlement and instead complains about FDA's treatment of the company. *Id.*, ¶66. Likewise, the request for exclusion, from Star Scientific shareholder Gregory Olson, takes issue only with the article published in *The Street* in January 2013 that precipitated this Action, and not with the substantive terms of the Settlement.[7] *Id.*

The hearing to determine the fairness of the Settlement is set for June 22, 2015. Preliminary Approval Order, ¶4.

**D. Terms of the Settlement**

As a result of the Settlement, Defendants have agreed to cause certain of Star Scientific's D&O insurers to pay $5,900,000 in cash into the Settlement Account established for the benefit of the Settlement Class. Stipulation, ¶2.1. The $5,900,000 in cash, plus interest earned from the date it is established, less attorneys' fees and any expenses awarded by the Court, Notice and Administration costs, any Taxes and Tax expenses payable from the Settlement Fund, and any other Court-approved deductions (the "Net Settlement Amount"), will be distributed to

---

[6] Lead Counsel will address other objections or requests for exclusions received, if any, in a reply brief, due to be filed after the objection deadline expires on June 1, 2015. *Id.*

[7] As alleged in the Complaint, on January 23, 2013, *The Street* published an article entitled "Star Scientific's Made-Up, Misleading Relationship With Johns Hopkins" in which it revealed that Johns Hopkins did not have any official involvement in the testing of Anatabloc and that Johns Hopkins researchers Drs. Paul Ladenson and Patrizio Caturegli were moonlighting as paid consultants for Star Scientific (and not acting on behalf of Johns Hopkins) in connection with the clinical development and testing of Anatabloc. Complaint, ¶¶7, 94-98; Oddo Decl., ¶32 n.6. As a result of this news, the trading price of Star Scientific's common stock immediately dropped by $0.31 per share, closing at $2.33 per share—a one-day decline of nearly 12% on volume of 6.1 million shares. Complaint, ¶¶7, 94-98; Oddo Decl., ¶32 n.6.

Authorized Claimants (*i.e.*, Settlement Class Members who file timely and valid Proof of Claim and Release Forms) in accordance with the Plan of Allocation described fully in the Notice. *Id.*, ¶2.2. The Plan of Allocation, which was drafted with the assistance of a damages consultant, is based on Lead Plaintiff's theory of liability and damages and treats all potential claimants in a fair and equitable manner.[8] Oddo Decl., ¶36.

Lead Plaintiff and Lead Counsel submit that, in light of the numerous risks and uncertainties involved in continued litigation, the Settlement, which provides for $5,900,000 in cash for the benefit of the Settlement Class, is an excellent recovery that warrants approval by the Court. Moreover, as more fully discussed below, the Settlement was entered into in good faith, after extensive arm's-length negotiations between experienced and informed counsel on both sides. Oddo Decl., ¶37. Lead Plaintiff submits that the Settlement is well within the range of reasonableness and therefore warrants final approval.

## III. STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS

There is a strong public policy favoring settlement in class actions. *See Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08cv1310 (AJT/JFA), 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009) ("[T]here is an overriding public interest in favor of settlement, particularly in class action suits."). Rule 23(e) of the Federal Rules of Civil Procedure provides that class actions may be settled only with the approval of the Court, and only on a finding, after reasonable notice and a hearing, that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *In re MicroStrategy, Inc. Sec. Litig.*, 150 F. Supp. 2d 896, 903-04 (E.D. Va.

---

[8] The Plan of Allocation provides that an Authorized Claimant's share of the Net Settlement Amount will depend on the number of valid claims submitted, the number of shares of Star Scientific common stock the Authorized Claimant purchased during the Settlement Class Period, and the dates on which the Authorized Claimant bought and sold Star Scientific shares. *See* Stipulation, Ex. A-1 (Doc. 123).

2001) ("Simply put, the Court must assess whether the settlement here is both fair and adequate under the circumstances.").[9]

As this Court recognized in *MicroStrategy*, the Fourth Circuit applies a two-part test to determine whether a proposed settlement meets the requirements of the Federal Rules by considering two elements: "fairness," which focuses on whether the proposed settlement was negotiated at arm's-length, and "adequacy," which focuses on whether the consideration provided to class members is sufficient. *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001) (the "Fourth Circuit adopted a bifurcated analysis, separating the inquiry into a settlement's 'fairness' from the inquiry into a settlement's 'adequacy'") (quoting *Jiffy Lube*, 927 F.2d at 158-59).

The factors which courts should consider in determining fairness are: (i) the posture of the case at the time settlement was proposed; (ii) the extent of discovery that had been conducted; (iii) the circumstances surrounding the negotiations; and (iv) the experience of counsel. *See Jiffy Lube*, 927 F.2d at 158-59; *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975). The adequacy inquiry considers the substantive factors of the settlement, including: (i) the relative strength of plaintiffs' case on the merits; (ii) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (iii) the anticipated duration and expense of additional litigation; (iv) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (v) the degree of opposition to the settlement. *See Jiffy Lube*, 927 F.2d at 159; *Flinn*, 528 F.2d at 1173-74.

In assessing the fairness and adequacy of a settlement, courts give a "'strong initial presumption that the compromise is fair and reasonable.'" *S.C. Nat'l Bank v. Stone*, 139 F.R.D.

[9] Here, as throughout, all emphasis is added and citations and footnotes are omitted unless otherwise noted.

335, 339 (D.S.C. 1991). "Absent evidence to the contrary, the Court should presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion." *Deem v. Ames True Temper, Inc.*, No. 6:10-CV-01339, 2013 WL 2285972 at*2 (S.D. W.Va. May 23, 2013). Because compromise and settlement are favored, "[c]ourts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement. They do not decide the merits of the case or resolve unsettled legal questions." *See Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981). Thus, the Court should not "turn the settlement hearing 'into a trial or a rehearsal of the trial "nor need it" reach any dispositive conclusions on the admittedly unsettled legal issues' in the case." *S.C. Nat'l Bank*, 749 F. Supp. at 1424.

As set forth below, the Settlement represents an excellent result and satisfies each of the Fourth Circuit factors.

## IV. THE SETTLEMENT MERITS FINAL APPROVAL

### A. The Settlement Is Fair

#### 1. The Extent of Investigation and Discovery Conducted Supports Fairness of the Settlement

Under this factor, "[t]he parties must have engaged 'in sufficient investigation of the facts to enable the court to intelligibly make an appraisal' of the fairness of a proposed class settlement." *Deem*, 2013 WL 2285972, at *2. There is no minimum amount of discovery that must be undertaken to satisfy this factor. *See Jiffy Lube*, 927 F.2d at 159; *Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 501 (E.D. Va. 1995) (finding settlement was "fair" where no formal discovery took place but plaintiffs conducted sufficient informal discovery and investigation to fairly evaluate the merits of defendants' positions during settlement

negotiations); *see also In re Mego. Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding parties could identify strengths and weaknesses of claims without formal discovery).

Here, the litigation had reached a stage whereby Lead Plaintiff and her counsel had sufficient information to fully evaluate the merits of the claims asserted, as well as the obstacles to success and the propriety of settlement. The Settlement was negotiated after Lead Counsel: (i) completed an extensive investigation into the facts and law underlying Lead Plaintiff's claims, including, *inter alia*, a thorough review and analysis of Star Scientific's filings with the SEC, documents published by Defendants, such as press releases and marketing materials, and transcripts of conference calls with securities analysts; securities analysts' reports, and business and financial media articles about the Company; information obtained from other public and proprietary sources; and pleadings, exhibits and DOJ documents relating to *McDonnell* Action; (ii) prepared an evaluation of causation and damages; (iii) defeated Defendants' Motion to Dismiss; (iv) filed a motion for class certification; (v) prepared and served discovery requests upon Defendants, including noticing depositions of ten different defendants and third parties; (vi) attended a settlement conference before Judge Novak and submitted settlement conference briefing where the strengths and weaknesses of the Parties' respective claims and defenses were extensively debated; (v) prepared fully researched mediation statements and attended an all-day mediation session before Jed D. Melnick of JAMS which further highlighted the legal and factual issues presented in this litigation; and (vi) engaged in hard fought, arm's-length settlement negotiations involving months of telephonic and written exchanges that led to an agreement in principle on the material terms of the Settlement. Oddo Decl., ¶38.

Having sufficient information to properly evaluate the Action and propriety of settlement, Lead Plaintiff and her counsel have settled the litigation on terms favorable to the Settlement Class.

#### 2. The Circumstances Surrounding Settlement Negotiations Support Fairness of the Settlement

The Settlement is the product of vigorous and informed arm's-length negotiations. Experienced counsel representing the Parties and Star Scientific's insurance carriers participated in a Settlement Conference with Judge Novak and in an in-person formal mediation session before Jed Melnick at JAMS. Oddo Decl. ¶39. Before each of these sessions, the Parties prepared and submitted settlement briefing and engaged in several informal mediation discussions. *Id.*

During settlement negotiations, Lead Plaintiff and her counsel made it clear that, while they were prepared to fairly assess the strengths and weaknesses of the claims asserted, they would continue to litigate rather than settle for less than fair value. *Id.*, ¶40. Indeed, as one court noted, where, like here, settlement negotiations were well informed and at arm's-length, significant weight is afforded to the judgment of class counsel concerning the fairness of the settlement terms:

> The settlement discussions involved here were ... hard fought and always adversarial. The negotiations in this case were conducted by able counsel who have a substantial amount of litigation experience in this sort of complex [litigation]. Finding no indication of any collusion, it is therefore appropriate for the court to give significant weight to the judgment of class counsel that the proposed settlement is in the interest of their clients and the class as a whole.

*S.C. Nat'l Bank*, 139 F.R.D. at 339.

Accordingly, the Settlement enjoys a presumption that it was reached without collusion and is fair, adequate, and reasonable. *See Strang*, 890 F. Supp. at 501-02 ("[T]he Court is

persuaded that Plaintiffs' counsel, with their wealth of experience and knowledge in the securities-class action area, engaged in sufficiently extended and detailed settlement negotiations to secure a favorable settlement for the Class.").

### 3. The Experience of Counsel Supports the Fairness of the Settlement

The opinion of experienced counsel familiar with the facts of the case should be given weight in evaluating a proposed settlement. *See United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999). Indeed, where there is "no indication of any collusion, it is therefore appropriate for the court to give significant weight to the judgment of class counsel that the proposed settlement is in the interest of their clients and the class as a whole." *S.C. Nat'l Bank*, 139 F.R.D. at 339; *see also Flinn*, 528 F.2d at 1173.

This Action has been litigated and settled by experienced and competent counsel on both sides of the case. Lead Counsel is well known for its experience and success in complex class action litigation and has many years of experience in class litigation involving corporate shareholders. *See* Oddo Decl., Ex. A.[10] Based on its extensive experience and expertise, Lead Counsel has determined that the Settlement is in the best interest of the Settlement Class after weighing the substantial benefits of the Settlement against the numerous obstacles to a better recovery after continued litigation.

The quality of opposing counsel is also important in evaluating the quality of Lead Counsel's work. *See MicroStrategy*, 148 F. Supp. 2d at 665 (noting "counsel for ***both*** sides are nationally recognized members of the securities litigation bar" when considering the fairness of the settlement). Defendants are represented by lawyers from K&L Gates LLP, a law firm with

---

[10] Robbins Arroyo has litigated scores of shareholder class actions to successful resolution and its lawyers are nationally recognized as leaders in the field of shareholder rights litigation. Oddo Decl., ¶42 & Ex. A.

an abundance of experience representing defendants in this type of litigation. Oddo Decl., ¶101. Thus, the recommendations of experienced and qualified counsel favor approval of the Settlement.

### B. The Proposed Settlement Is Adequate

#### 1. The Strength of Lead Plaintiff's Case on the Merits and the Existence of Any Difficulties of Proof or Defenses Lead Plaintiff May Encounter Support the Adequacy of the Settlement

The "first and second *Jiffy Lube* factors … compel the Court to examine how much the class sacrifices in settling a potentially strong case in light of how much the class gains in avoiding the uncertainty of a potentially difficult case." *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 256 (E.D. Va. 2009). Securities cases, like the present one, are "notably difficult and notoriously uncertain." *Id.* at 255 (citing *S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1426 (D.S.C. 1990)). While Lead Plaintiff is confident in the merits of her claims, the Settlement Class would still have to overcome numerous defenses asserted by Defendants in order to survive Defendants' dispositive motions, summary judgment, and ultimately recover at trial. Further litigation to establish liability thus posed a significant threat to any class-wide recovery.

##### a. Risks of Liability Weigh in Favor of Settlement

In order to prevail on her §10(b) claims at trial, Lead Plaintiff would bear the burden of proving "that the … [d]efendants were responsible for the material misstatements or omissions of fact; that these defendants knowingly or recklessly misstated or omitted the alleged material facts; that the class justifiably relied upon the misrepresentations; and that the class suffered damages as a result of the misconduct." *MicroStrategy*, 148 F. Supp. 2d at 665-66. Proving the elements of a section 10(b) claim "is a heavy burden, for it is always true that '[p]laintiffs' risks of establishing liability are significant where fraud is alleged. Elements such as scienter,

materiality of misrepresentation and reliance by the class members often present significant barriers to recovery in securities fraud litigation.'" *Id.* at 666.

Lead Plaintiff would certainly face challenges from Defendants that she has not met her burden of demonstrating the requisite level of scienter to recover damages. In their Motion to Dismiss, Defendants vigorously opposed any claim that they knew or were severely reckless in not knowing that the statements made during the Class Period were false and misleading. *See* Doc. 108. Defendants also argued, among other things, that Lead Plaintiff's allegations were insufficient to establish scienter. *Id.* Lead Plaintiff knew that, despite the substantial evidence obtained in support of its claims, proving that Defendants knowingly or with conscious disregard made false statements and omissions concerning Johns Hopkins' purportedly independent involvement in pre-clinical and clinical studies of Anatabloc® would be a difficult task fraught with uncertainty.

Moreover, if the litigation of this Action were to continue beyond its present stage, Defendants' inevitable summary judgment motion(s) and trial preparation efforts would result in a massive undertaking and require considerable additional time and resources be expended by the Parties. Indeed, due to the number of potential witnesses in this litigation, Lead Counsel would need to expend many hours preparing for direct and cross-examination, would be required to identify and/or prepare the many exhibits intended for use at trial, and would expect significant pre-trial motion practice. Even the trial itself would require weeks, if not longer, to conduct.

In sum, Lead Counsel recognized that continued litigation of this Action would be complex, time-consuming, and expensive, with the chance of obtaining a recovery greater than that provided for by the Settlement far from assured. The Settlement secures for the Settlement

Class a substantial and immediate benefit undiminished by further litigation expenses, without the delay, risk, and uncertainty of continued litigation. Oddo Decl, ¶48; *see MicroStrategy*, 148 F. Supp. 2d at 665-66 ("a fair assessment of plaintiffs' burden of establishing the elements of their fraud claim against the asserted defenses … on liability and damages grounds firmly supports the propriety of the partial settlement").

**b. Risk of Establishing Damages**

Even if Lead Plaintiff were successful in establishing liability, considerable risk remained with respect to proving damages and establishing loss causation at trial. *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006)**Error! Bookmark not defined.** (recognizing that "the legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages"). Indeed, loss causation requires proof of a "causal connection between the material misrepresentation and the [economic] loss" investors suffered. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). Once causation is established, damages estimation remains a "'complicated and uncertain process, typically involving conflicting expert opinion' about the difference between the purchase price and [share]s 'true' value absent the alleged fraud." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004); *see also MicroStrategy*, 148 F. Supp. 2d at 667 ("the damages issue would have become 'a battle of experts at trial, with no guarantee of the outcome in the eyes of the jury'"). Such expert testimony could rest on many subjective assumptions, any of which could be rejected by a jury as speculative or unreliable.[11]

[11] At trial, Lead Plaintiff would likely have faced a motion *in limine* seeking to exclude their damage expert's testimony. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993). Even had Lead Plaintiff's causation and damages evidence survived a *Daubert* motion, the loss causation analysis and damage valuations of Lead Plaintiff's and Defendants' experts would have

Even if Lead Plaintiff prevailed in establishing loss causation and damages and obtained a substantial judgment after trial, there is little doubt that Defendants would appeal. Moreover, the appeals process would have likely spanned several years, during which the Settlement Class would have received no distribution on any damage award. In addition, an appeal of any verdict would carry the risk of reversal, in which case the Settlement Class would receive no recovery even after having prevailed on the claims at trial. Even very large judgments recovered after lengthy litigation and trial can be completely lost on appeal or as a result of a judgment notwithstanding the verdict.[12]

Here, the Settlement appropriately balances the risks and benefits of continued litigation against the benefits afforded to Settlement Class Members of an immediate and certain recovery.

**2. The Complexity, Length, and Expense of Further Litigation Supports Approval of the Settlement**

Securities class actions are extremely complex, time consuming, and expensive. Courts have repeatedly said that "'[s]tockholder litigation is notably difficult and notoriously uncertain.'" *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 529 (E.D. Pa. 1990)

---

varied substantially. Oddo Decl., ¶52. In a "battle of experts," it is impossible to predict with any certainty which arguments would find favor with the jury. *See MicroStrategy*, 148 F. Supp. 2d at 667; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) (approving settlement where "it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions").

[12] For example, in *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997), the jury returned a verdict of approximately $81.3 million in favor of the shareholder class, but the verdict was reversed on appeal, leaving the class with nothing. *See also Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (the class won a large jury verdict and a motion for j.n.o.v. was denied, but on appeal the judgment was reversed and the case dismissed); *Kurz v. Phila. Elec. Co.*, 96 F.3d 1544 (3d Cir. 1996) (in ERISA class action, Third Circuit reversed a judgment for plaintiffs in bench trial and entered judgment for all defendant on all counts); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial).

(citation omitted). Indeed, courts have recognized that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000).

There is no question that this class action presented very complicated factual and legal issues. Defendants have demonstrated a commitment to defend this case through and beyond trial, if necessary, and are represented by well-respected and highly capable counsel from K&L Gates LLP. If not for this Settlement, the case would have continued to be fiercely contested by all parties. The expense and time of continuing litigation would have been substantial. As the court noted in connection with approving the class action settlement reached in *Ikon*:

> In the absence of a settlement, this matter will likely extend for ... years longer with significant financial expenditures by both defendants and plaintiffs. This is partly due to the inherently complicated nature of large class actions alleging securities fraud: there are literally thousands of shareholders, and any trial on these claims would rely heavily on the development of a paper trial through numerous public and private documents.

*Id.* at 179.

The securities claims advanced by Lead Plaintiff involve complex factual issues, which would require document discovery, numerous depositions, and expert discovery and testimony. Assuming Lead Plaintiff defeated Defendants' renewed Motion to Dismiss and after completion of discovery, Defendants' expected motions for summary judgment would have to be briefed and argued, a pre-trial order would have to be prepared, proposed jury instructions would have to be submitted, and motions *in limine* would have to be filed and argued. Substantial time and expense would need to be expended in preparing the case for trial. The trial itself would have been long, expensive, and uncertain and no matter the outcome, appeals would be virtually assured. This would add considerably to the expense and duration of the litigation.

The legal issues are equally as complex – proving falsity, materiality, causation, and damages, would likely require expert testimony, as discussed above. There exists no doubt that the Settlement will spare the litigants the significant delay, risk, and expense of continued litigation. Many hours of the Court's time and resources have also been spared. Moreover, even if the Settlement Class could recover a larger judgment after a trial, the additional delay through trial, post-trial motions, and the appellate process could deny the Class any recovery for years, which would further reduce the true value of any recovery – particularly when offsetting the costs and fees associated with such continued litigation. The $5,900,000 Settlement, at this juncture, results in a certain and substantial tangible recovery, without the considerable risk, expense, and delay of additional discovery, summary judgment motion(s), and trial and post-trial litigation. *See Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002) ("To most people, a dollar today is worth a great deal more than a dollar ten years from now.").

A prolonged period of additional pretrial proceedings and a lengthy and uncertain trial would not serve the interest of the Settlement Class in light of the substantial monetary benefits provided for by the Settlement when weighed against the likelihood of a larger recovery years down the road after continued litigation. Thus, the prospect of continued protracted, expensive, and uncertain litigation strongly supports approval of the Settlement.

### 3. The Potential Insolvency of Defendants and the Likelihood of Recovery on a Litigated Judgment Supports Settlement Approval

Here, there was a real and growing risk that continued litigation would diminish, not enhance, the prospects of the Settlement Class for recovery. The costs of further litigation created a substantial risk that Defendants' D&O insurance coverage could be significantly

depleted or exhausted by defense costs and other claims on Star Scientific's policies.[13] Had the parties continued to litigate the Action, the amount available to satisfy a judgment or fund a monetary settlement would have quickly dissipated. Star Scientific has limited financial resources and the Company has disclosed in its financial documents that it has been operating at a loss for the last twelve years. *See* Rock Creek Pharmaceuticals, Inc., Quarterly Financial Report (Form 10-Q), at 9 (filed May 12, 2015). The Company has also disclosed it "does not believe that [D&O insurance] proceeds (together with other capital resources) will support its operations beyond June 2015, and the insurance proceeds will not be sufficient to fund all outstanding legal fees and expenses relating to … litigation, which was $5.1 million as of March 31, 2015." *Id.*

Given Star Scientific's precarious financial condition and severely limited cash resources, if the dwindling D&O insurance coverage was depleted or exhausted, there would not be sufficient funds to finance a settlement or to satisfy a judgment. Thus, Lead Plaintiff was required to balance the benefits of settling against the very real risk that continued litigation would actually have reduced the recovery of the Settlement Class, regardless of the outcome on the merits.

The Settlement obtained here appropriately balances the risks and benefits of continued litigation against the benefits afforded to Settlement Class Members of an immediate and certain recovery. *See Warner Commc'ns*, 618 F. Supp. at 746 ("[T]he 'prospect of a bankrupt judgment debtor down at the end of the road does not satisfy anyone involved in the use of class action

[13] On March 31, 2015, a settlement of the shareholder derivative litigation involving Star Scientific was preliminarily approved. *In re Star Scientific, Inc. Derivative Litig.*, No. 1:13-CV-00550, Order (E.D. Va. Mar. 31, 2015). The Company is also facing a consumer class action that was filed in the U.S. District Court for the Northern District of Illinois on January 24, 2014, as well as other legal actions. *See* http://www.sec.gov/Archives/edgar/data/776008/000114420415029550/v409875_10q.htm.

procedures.'"); *Stott v. Capital Fin. Servs., Inc.*, No. 3:11-cv-2073-F, 2011 WL 4047666, at *28 (N.D. Tex. Sept. 12, 2011)**Error! Bookmark not defined.** (observing that the small settlement "at least provides class members with some measure of recovery, and … should be approved when the alternative is no recovery at all"). The Settlement guarantees a present and certain recovery for eligible claimants in light of the funds available, a sound basis for final approval. *See Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992)**Error! Bookmark not defined.** ("certainty of payment through settlement points in favor of approval of the proposed settlement" where defendants lacked significant assets or insurance); *Williams v. Nat'l Sec. Ins. Co.*, 237 F.R.D. 685, 695 (M.D. Ala. 2006)**Error! Bookmark not defined.** (approving settlement where "substantial" risk of continued litigation would result in settling defendants' insolvency, "thus denying class members any increase in policy benefits pursuant to the settlement and a probable loss of existing benefits as they now exist").

#### 4. The Settlement Class Members Reaction to the Settlement Further Supports Approval of the Settlement

The attitude of class members with respect to a proposed settlement – whether expressed directly or indirectly by their failure to object after receiving notice of the settlement – is another factor to be considered by the Court. *Flinn*, 528 F.2d at 1173. In fact, shareholder "'reaction … to the proffered settlement … is perhaps the most significant factor to be weighed in considering its adequacy.'" *In re Rambus, Inc. Derivative Litig.*, No. C06-3513 JF(HRL), 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009); *Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (absence of large number of objections raises a strong presumption settlement is fair to class).

Here, notices of settlement were sent to over 51, 097 potential Settlement Class Members and the Summary Notice was published in *Investors' Business Daily*. Oddo Decl., ¶65. The time

period for objecting to the Settlement expires on June 1, 2015. To date, Lead Counsel has received only one objection and one request for exclusion. *Id.* Neither, however, criticizes the terms of the Settlement. The objection, from Star Scientific shareholder Michael Bradley, does not even mention the substantive terms of the Settlement and instead complains about FDA's treatment of the company. *Id.*, ¶66. Likewise, the request for exclusion, from Star Scientific shareholder Gregory Olson, takes issue only with the article in *The Street* in January 2013, that precipitated this Action, and not with the substantive terms of the Settlement.

In today's era of increased shareholder activism, the fact that just one single objection and one request for exclusion have been received (out of of the over 8 million[14] shares of Star Scientific common stock outstanding), strongly supports approval of the Settlement.[15] The lack of a significant number and any valid objections strongly suggests that, as a whole, Star Scientific shareholders are satisfied with the Settlement and believe it is an appropriate resolution of the claims asserted in the Action. *See In re Delphi Corp. Sec., Derivative & ERISA Litig.*, 248 F.R.D. 483, 498-99 (E.D. Mich. 2008) (a small number of opt-outs and objections can be viewed as indicative of the adequacy of the settlement); *Stoetzner v. U.S. Steel Corp.,* 897 F.2d 115, 118-19 (3d Cir.1990) ("only" 29 objections in 281 member class "strongly favors settlement"); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (3 objections out of 57,630 "raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members"').

[14] According to Star Scientific's Form 10-Q filed with the SEC on May 12, 2015, the number of shares of Star Scientific common stock outstanding is 8,228,670.

[15] Despite his objection, Mr. Bradley submitted a Proof of Claim form, seeking to recover via the Settlement.

## V. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND SHOULD BE APPROVED

Approval of a plan of allocation of settlement proceeds in a class action under Rule 23 is "'governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate.'" *Omnivision*, 559 F. Supp. 2d 1045; *Beecher v. Able*, 575 F.2d 1010, 1016 (2nd Cir. 1978)**Error! Bookmark not defined.**. A plan of allocation "need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002) (citing *White v. NFL*, 822 F. Supp. 1389, 1420-24 (D. Minn. 1993), *aff'd*, 41 F.2d 402 (8th Cir. 1994)). Courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members ... equitably." *Beacher*, 575 F.2d at 1016.

The Plan of Allocation, fully described in the Notice, establishes the method by which the Net Settlement Amount will be distributed to Settlement Class Members who submit acceptable Proof of Claim and Release forms. *See* Stip, Ex. A-1. The Plan of Allocation was formulated by Lead Counsel, in consultation with their advisors, ensuring its fairness and reliability. Under the proposed Plan of Allocation, each authorized claimant will receive a *pro rata* share of the "Net Settlement Amount," *i.e.,* the Settlement consideration less certain fees and expenses, with that share to be determined by the ratio that the authorized claimant's permitted claim bears to the total allowed claims of all authorized claimants.

The Plan of Allocation calls for the distribution of the settlement proceeds to those Settlement Class Members who suffered economic losses as a result of their purchase of Star Scientific common stock at allegedly artificially inflated prices and reflects Lead Counsel's judgment regarding the relative strengths and weaknesses of the claims at issue. Numerous

courts have approved distribution plans that allocate the settlement proceeds according to the relative strengths and weaknesses of the various claims. *See In re Holocaust Victim Assets Litig.*, 413 F.3d 183, 186 (2d Cir. 2001). This is eminently fair. Otherwise, certain class members may receive an inequitable windfall to the detriment of others. *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

Lead Counsel believes that it acted fairly in developing the Plan of Allocation.[16] Accordingly, Lead Counsel respectfully submits that the proposed Plan of Allocation is fair and reasonable and should be approved by the Court.

## VI. THE COURT SHOULD GRANT FINAL CLASS CERTIFICATION FOR SETTLEMENT PURPOSES

The Court previously granted preliminary class certification of the Settlement Class for settlement purposes only. *See* Preliminary Approval Order, ¶¶5-6. Doc. 129. Because nothing has occurred since then to cast doubt on whether the applicable prerequisites of Rule 23 are met, the Court should finally certify the Settlement Class. *See* Docs. 124-25.

## VII. CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Motion be granted, that the proposed Settlement and Plan of Allocation be finally approved, that the Settlement Class be finally certified for settlement purposes, that the methods and forms of notice provided to Settlement Class Members be finally approved, and that final judgment be entered in accordance therewith.

DATED: May 26, 2015

Respectfully submitted,

NANCY LOPES

/s/

---

[16] No objections to the Plan of Allocation have been received to date. Oddo Decl., ¶74.

______________________________

Collin J. Hite (VSB #38869)
Franklin R. Cragle, III (VSB #78398)
HIRSCHLER FLEISCHER, P.C.
The Edgeworth Building
2100 East Cary Street
P.O. Box 500
Richmond, VA 23218
Telephone: (804) 771-9500
Facsimile: (804) 644-0957
Email: chite@hf-law.com
fcragle@hf-law.com

*Liaison Counsel for Plaintiff and the Proposed Class*

Brian J. Robbins (admitted *pro hac vice)*
Stephen J. Oddo (admitted *pro hac vice)*
Edward Gerard (admitted *pro hac vice)*
Justin D. Rieger (admitted *pro hac vice)*
ROBBINS ARROYO LLP
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619)525-3991
Email: brobbins@robbinsarroyo.com
soddo@ robbinsarroyo.com
egerard@robbinsarroyo.com
jrieger@robbinsarroyo.com

*Lead Counsel for Plaintiff and the Proposed Class*

1020817

## CERTIFICATE OF SERVICE

I hereby certify that on the ___ day of May, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Maurice Francis Mullins
Edward Everett Bagnell, Jr.
SPOTTS FAIN PC
411 E. Franklin St., Suite 600
P.O. Box 1555
Richmond, VA 23219
Telephone: (804) 697-2069
Facsimile: (804) 697-2169
cmullins@spottsfain.com
ebagnell@spottsfain.com

Charles Lee Eisen
Nicholas George Terris
Amy Jo Eldridge
K & L GATES LLP
1601 K St., NW
Washington, D.C. 20006
Telephone: (202) 778-9000
Facsimile: (202) 778-9100
charles.eisen@klgates.com
nicholas.terris@klgates.com
amy.eldridge@klgates.com

Christina N. Goodrich
K&L GATES LLP
10100 Santa Monica Boulevard
Seventh Floor
Los Angeles, CA 90067
Telephone: (310) 552-5547
Facsimile: (310) 552-5001
christina.goodrich@klgates.com

*Counsel for defendants Star Scientific, Inc., Rock Creek Pharmaceuticals, Inc., Paul L. Perito, Park A. Dodd, III, and Curtis Wright*

Richard Cullen
Anne Whittemore
Anne B. McCray
Ryan E. Bonistalli
MCGUIRE WOODS LLP
One James Center
901 East Cary Street
Richmond, VA 23219

Telephone: (804) 775-1000
Facsimile: (804) 775-1065
rcullen@mcguirewoods.com
awhittemore@mcguirewoods.com
amccray@mcguirewoods.com
rbonistalli@mcguirewoods.com

*Counsel for defendant Jonnie R. Williams, Sr.*

Michael F. Imprevento
BREIT DRESCHER IMPREVENTO & WALKER
Towne Pavilion Center II
600 22nd St, Suite 402
Virginia Beach, VA 23451
Telephone: (757) 670-3884
Facsimile: (757) 299-8035
mimprevento@breitdrescher.com

Marc I. Gross
Lesley F. Portnoy
Jeremy A. Lieberman
POMERANTZ GROSSMAN HUFFORD
DAHLSTROM & GROSS LLP
600 Third Ave., 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com

Patrick V. Dahlstrom
POMERANTZ GROSSMAN HUFFORD
DAHLSTROM & GROSS LLP
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

Peretz Bronstein
BRONSTEIN GEWIRTZ & GROSSMAN LLP
600 E 42 Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

Philip Kim
THE ROSEN LAW FIRM PA
275 Madison Ave, 34th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
pkim@rosenlegal.com

*Counsel for Plaintiff Francis J. Reuter*

Andrew George Simpson
THE SIMPSON LAW FIRM, PLLC
1921 Gallows Road, Suite 750
Vienna, VA 22182
Telephone: (703) 548-3900
Facsimile: (703) 883-0899
andrew@andrewsimpson.com

Reed R. Kathrein
Peter E. Borkon
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
peterb@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7291
Facsimile: (206) 623-0594
steve@hbsslaw.com

Nathan M. Cihlar
STRAUS & BOIES, LLP
4041 University Drive, 5th Floor
Fairfax, VA 22030
Telephone: (703) 764-8700
Facsimile: (703) 764-8704
ncihlar@straus-boies.com

*Counsel for movant STSI Investor Group*

/s/

Collin J. Hite
VSB #38869
Franklin R. Cragle, III
VSB #78398
HIRSCHLER FLEISCHER, PC
2100 East Cary Street
Post Office Box 500
Richmond, VA 23218
Telephone: (804) 771-9500
Facsimile: (804) 644.0957
chite@hf-law.com
fcragle@hf-law.com